**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY J. BLISS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:10-CV-02231 |
| vs. | : | (Complaint Filed 10/28/10) |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SOCIAL SECURITY, | : | (Judge Caputo) |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Jeffrey J. Bliss's claim for social security disability insurance benefits and supplemental security income benefits. For the reasons set forth below we will affirm the decision of the Commissioner.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Bliss meets the insured status requirements of the Social Security Act through December 31, 2014 Tr. 9 and 11.[1]

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or

---

[1] References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on December 30, 2010.

other disabled individuals who have little or no income.

Bliss was born in the United States on January 26, 1971. Tr. 129. Bliss graduated from high school in 1989 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 29, 259, 268 and 310-311. After graduating from high school he completed some college courses. Tr. 311 and 337.

Bliss has prior work experience as a customer service person (November, 2008 to "the present"),[2] a restaurant supervisor (May 2008-September 2008), retail store manager (March 2007 -July 2007), night auditor[3] (May 2006-December 2006), front desk clerk at an Econo Lodge (August 2005-January 2006), office assistant (August 2003-April 2004), and a flight attendant (January 1992 to August 2003). Tr. 52 , 271-272 and 310-311. A vocational expert described Bliss's past relevant employment[4] as semi-skilled to skilled, sedentary to medium work.[5]  Tr. 52.

---

[2] At the administrative hearing Bliss's resume was admitted into evidence. Tr. 310-311. That resume was dated January 5, 2010, and indicated that Bliss worked as a "Check Out Coach and [in the] Customer Service Center, Giant Food Store, McConnellsburg, PA" from "11/08-Present." Id. In the resume Bliss stated that he had 6 years of management experience and 13 plus years of hospitality and customer service experience. Id.

[3] Bliss described the night auditor position in part as follows:"Responsible for closing out guest accounts, processing cash, checks, and verifying credit card accounts for a 66 room limited service property. Additional duties included data entry tasks and inputting daily revenue reports and accounting for revenue received each business day. Registered guests and coordinated future reservations." Tr. 311.

[4] Past relevant employment in the present case means work performed by Bliss during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

[5] The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

(continued...)

Bliss also worked as an animal control officer from November 2007 to May 2008. Tr. 271-272. The vocational expert when testifying did not address the work

---

[5](...continued)
    (a) *Sedentary work*. Sedentary work involves lifting
no more than 10 pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and
small tools. Although a sedentary job is defined as one
which involves sitting, a certain amount of walking and
standing is often necessary in carrying out job duties.
Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met.

    (b) *Light work*.  Light work involves lifting no more
than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds.  Even
though the weight lifted may be very little, a job is
in this category when it requires a good deal of
walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg
controls.  To be considered capable of performing a
full or wide range of light work, you must have the
ability to do substantially all of these activities.
If someone can do light work, we determine that
he or she can also do sedentary work, unless there
are additional limiting factors such as  loss of fine
dexterity or inability to sit for long periods of time.

    (c) *Medium work*.  Medium work involves lifting no
more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If
someone can do medium work, we determine that
he or she can do sedentary and light work.

    (d) *Heavy work*.  Heavy work involves lifting no more
than 100 pounds at a time with frequent lifting or
carrying of objects weighing up to 50 pounds. If
someone can do heavy work, we determine that he
or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

...

performed by Bliss as an animal control officer. Id.   Bliss stated that in that position he frequently lifted 50 pounds or more and was on his feet "most of if not all of" an 8-hour workday.  Tr. 273.  This description is consistent with the definition of heavy work.

Records of the Social Security Administration reveal that Bliss had earnings from 1987 through 2008, as follows:

| Year | Earnings |
|---|---|
| 1987 | $ 2027.95 |
| 1988 | 4326.72 |
| 1989 | 5827.97 |
| 1990 | 8191.96 |
| 1991 | 9099.84 |
| 1992 | 13086.34 |
| 1993 | 19014.29 |
| 1994 | 17756.02 |
| 1995 | 19572.02 |
| 1996 | 10159.62 |
| 1997 | 15152.23 |
| 1998 | 17945.75 |
| 1999 | 22176.93 |
| 2000 | 28620.97 |
| 2001 | 29000.39 |
| 2002 | 15365.06 |
| 2003 | 12448.41 |
| 2004 | 15197.18 |
| 2005 | 8414.99 |
| 2006 | 12229.66 |
| 2007 | 11142.17 |
| 2008 | 16123.83 |

Tr. 157.  Bliss's total earnings from 1987 through 2008 were $312,880.30.  Id.

Bliss alleges that he became disabled on September 30, 2008, because of an HIV infection, gastroesophageal reflux disease, cyclothymia[6] and a panic disorder. Tr. 27,

---

[6]Cyclothymic disorder (cyclothymia) "is a mild form of bipolar disorder (manic depressive illness) in which a person has mood swings over a period of years that go from mild depression to euphoria and excitement." Cyclothymic Disorder, A.D.A.M. Medical
(continued...)

60-61, 125, 129 and 260. Bliss contends that because of fatigue and the side-effects of HIV medications he cannot work full-time. Tr. 27. The record reveals that Bliss "was first diagnosed as being HIV positive in 1996." Tr. 345.

In 2008, Bliss's earnings from working as an animal control officer for a humane society were $5831.28, as a restaurant supervisor $9414.74, and as a customer service person at Giant Food Stores, Inc., $835.81. Tr. 164, 271-272 and 310. Bliss's personnel file from Giant Food Stores, Inc., reveals that he was hired on November 9, 2008. Tr. 212 and 244. On his application for employment, Bliss stated that he was seeking full-time employment and that he could work any hours, seven days per week. Tr. 213. At the administrative hearing held in this case on April 7, 2010, Bliss testified that he had been working at Giant Food Stores, Inc., for one year and five months and that he was currently working at the customer service desk. Tr. 28-29. Bliss stated that he was a check-out coach in front of the store who supervises the cashiers and that he was currently working 3 to 4 days per week, 6 ½ to 8 hours per day. Id. He also stated that he was on his feet constantly and was able to lift items such as a 40 pound bag of dog food. Id. Bliss claimed that he could not work more than part-time because he gets mentally drained. Tr. 31. When asked whether he had the stamina to work 8 hours per day, five days per week, in a position where he would be mostly sitting and not dealing with the public he stated that he did not believe he could engage in that type of work because of his "mental issues." Tr. 36. Bliss did not claim that his physical ailments would prevent him from engaging in that type of sedentary

---

[6](...continued)
Encyclopedia, U.S. National Library of Medicine, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002517/ (Last accessed November 17, 2011).

5

work activity. Id.

On October 30, 2008, Bliss filed protectively[7] an application for disability insurance benefits and on November 4, 2008, an application for supplemental security income benefits. Tr. 9, 60-61 and 125-135. On March 30, 2009, the Bureau of Disability Determination[8] denied Bliss's applications. Tr. 60-61 and 63-74. On April 7, 2009, Bliss requested a hearing before an administrative law judge. Tr. 75-76. After 12 months had passed, a hearing before an administrative law judge was held on April 7, 2010. Tr. 24-59. On June 30, 2010, the administrative law judge issued a decision denying Bliss's applications. Tr. 9-18. On July 21, 2010, Bliss requested that the Appeals Council review the administrative law judge's decision and on October 1, 2010, the Appeals Council concluded that there was no basis upon which to grant Bliss's request for review. Tr. 1-5. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On October 28, 2010, Bliss filed a complaint in this court requesting that we reverse the decision of the Commissioner denying him social security disability insurance and supplemental security income benefits. The Commissioner filed an answer to the complaint and a copy of the administrative record on December 30, 2010. Bliss filed his brief on February 11, 2011, and  the Commissioner filed his brief on April 15, 2011. The

---

[7] Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[8] The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration.  Tr. 64 and 70.

appeal[9] became ripe for disposition on April 28, 2011, when Bliss filed a reply brief.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.");  Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting

---

[9]Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims.  See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments that is severe,[11] (3) has an

---

[10] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[11] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential
(continued...)

impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

---

[11](...continued)
evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

[12]If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[13]If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

**MEDICAL RECORDS**

Before we address the administrative law judge's decision and the arguments of counsel, we will review the relevant medical records. At the administrative hearing in this case, Bliss admitted that it was only mental impairments that prevented him from engaging in sedentary work. Although Bliss made that admission, we will comment briefly on one of his physical impairments. Although Bliss contracted the HIV virus in 1996, the medical records do not reveal that since contracting HIV Bliss made any significant complaints regarding side effects of medications prescribed for that condition, other than as will be mentioned below Bliss did at one point suffer heart palpitations supposedly attributable to HIV medications.

The record contains treatment notes from Family Services of Chemung County, Inc. (Chemung), Elmira, New York, for the period November 2004 through September 2006 which was well prior to Bliss's alleged disability onset date of September 30, 2008. Tr. 125 and 332-354. During that time Bliss was treated for depressive disorder and an anxiety disorder with occasional panic attacks and his Global Assessment of Functioning (GAF) score[14] never fell below 60. Id.   At a psychiatric evaluation on January

---

[14]The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or
(continued...)

13, 2005, Bliss told the evaluator, Carlos Delos-Reyes, M.D., that his HIV was "doing very well without medication." Tr. 345. A mental status examination of Bliss on that date was essentially normal other than Bliss was somewhat anxious, his mood was depressed and his affect flat. Tr. 346.   Dr. Delos-Reyes gave Bliss a GAF score of 65. Id.   All of the mental status examinations during this period were similar. Id.

In March, 2006, Bliss complained of depression and anxiety because of loss of his employment, financial issues, and relationship issues. Tr. 336. However, he commenced working in March 2006 and continued to work despite his alleged mental and physical ailments for up to 10 hours per day, four days per week, while treating at Chemung. Tr. 261.

In October 2007, Bliss was seen at Arnot Ogden Medical Center for complaints of headaches. Tr. 367-369. Bliss reported that he was HIV positive with an undetectable viral load.[15] Tr. 369. The results of a physical examination were essentially normal and a CT scan of the head was normal. Tr. 370 and 373. A CT of the brain showed no evidence of acute intracranial abnormality but revealed mucosal thickening consistent with sinusitis.

---

[14](...continued)
school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. Id.  A GAF score of 71 to 80 represents transient symptoms, if present, and expectable reactions to psychosocial stressors or no more than slight impairment in social, occupational, or school functioning. Id.

[15] HIV viral load is an important measurement of the amount of active HIV in the blood of someone who is HIV positive and also indicates if the individual's medication regimen is working. HIV Viral Load - What Is It and Why Is It Important? About.com, http://aids.about.com/od/technicalquestions/f/viralload.htm (Last accessed November 16, 2011).

Tr. 371. Bliss was diagnosed with sinusitis and prescribed an antibiotic, Zithromax. Tr. 370 and 372.

On July 2, 2008, Cynthia J. Whitener, M.D., an infectious disease specialist at Milton S. Hershey Medical Center, examined Bliss.  Tr. 408-410.  At that appointment Bliss stated that he was diagnosed with HIV in 1996 and had not been placed on antiretroviral medications until late in 2007.  Id.  Bliss stopped taking the medication within a few months because of heart palpitations and was started on a new medication in late February, 2008, which he tolerated well. Id.  Bliss also informed Dr. Whitener that he had been 100% compliant with his medications. Id.  Bliss's CD4 count was approximately 975[16] and his viral load was undetectable.  Id.   Bliss denied ever having an opportunistic infection.[17] Id.  Bliss has never been hospitalized or ill directly related to HIV infection, other than palpitations on his initial medication. Id.  The results of a physical examination of Bliss performed by Dr. Whitener were normal. Id.  Dr. Whitener's impression was as follows: "This is a 37-year old man who has been HIV infected for 12 years, and sounds to have very well controlled infection on current antiretroviral regimen.  His dose of Invirase is lower than

---

[16] "CD4 cells are a type of white blood cell that fights infection. Another name for them is T-helper cells. . . The CD4 count measures the number of CD4 cells in a sample of blood . . . Along with other tests, the CD4 count helps tell how strong your immune system is, indicates the stage of your HIV disease, guides treatment, and predicts how your disease may progress. . . A normal CD4 count is from 500 to 1,500 cells. . . Public health guidelines recommend starting on preventive antiretroviral therapy if CD4 counts are under 200, whether or not you have symptoms." HIV,AIDS and the CD4 Count, WebMD, http://www.webmd.com/hiv-aids/cd4-count-what-does-it-mean (Last accessed November 16, 2011).

[17] There are many germs (bacteria, viruses, etc.) that are normally found in the body.  Our immune system if healthy generally keeps them in check.  When the immune system is weakened by the HIV virus these germ can take advantage of that weakened condition.  These type of infections are called opportunistic infections.

13

what's generally recommended . . . He has a history of possible tertiary syphillis, likely adequately treated, has no symptoms suggestive of relapse. Other potential active medical issues include history of recurrent sinus problems, history of anxiety and depression, though currently this seems to be under control, hypertriglyceridemia, and gastroesophageal reflux disease. He will continue on his current medications for these problems now." Tr. 410. Dr. Whitener recommended that Bliss follow-up with her in 3-4 months. Id.

On November 26, 2008, Bliss had an appointment with Dr. Whitener regarding the HIV infection. Tr. 547-548. Bliss reported that he was tolerating his HIV medications well and denied any side effects. Tr. 547. Bliss's CD4 count was 611 with an undetectable viral load.   Tr. 548.

On March 5, 2009, Padma B. Hari, M.D., evaluated Bliss for complaints of chest pain. Tr. 471-472. Bliss was working in customer services at Giant Food Stores. Tr. 471. Dr. Hari ordered an EKG and echocardiogram. Tr. 471. Bliss also underwent an exercise protocol stress test which revealed that he achieved 13 METS[18] without EKG ischemic changes. Tr. 472. The diagnostic impression was atypical chest pain, probably noncardiac. Tr. 472.

On March 30, 2009, Mark Hite, Ed.D., a state agency psychologist, completed an evaluation of Bliss based on a review of the medical records. Tr. 478-490. Dr. Hite concluded that Bliss had affective and anxiety-related disorders that were not severe. Tr.

---

[18] METS is an abbreviation for metabolic equivalents, that is the multiples of resting oxygen uptake. The ability to exercise to 10 METS is consistent with "a good exercise tolerance."  Mark D. Darrow, M.D., Ordering and Understanding the Exercise Stress Test, American Academy of Family Physicians, http://www.aafp.org/afp/1999/0115/p401.html (Last accessed November 16, 2011).

478.  Dr. Hite stated that Bliss had only mild limitations in concentration, persistence or pace, and no limitations in activities of daily living and no difficulties in maintaining social functioning. Tr. 488.

In June, 2009, Bliss was seen for the first time by Harvey H. Shapiro, M.D., a psychiatrist. Tr. 491.  Bliss complained of racing thoughts and being tired all the time which he related back to high school. Tr. 491.  Bliss also reported that he had panic attacks twice a week for 20 minutes. Id.  Dr. Shapiro also noted that Bliss had been accused of forging a doctor's note in 2006. Tr. 492.  Bliss reported that he had 5 dogs, played computer games, had been living with his partner for two years, and was currently working in customer service at Giant Food Stores, Inc. Id.  Dr. Shapiro's diagnostic impression was that Bliss suffered from cyclothymic disorder and panic disorder. Tr. 492.  Dr. Shapiro gave Bliss a GAF score of 70, which is indicative of only mild symptoms.  Dr. Shapiro also gave Bliss a GAF score of 70 on July 21, 2009, September 14, 09, and January 29, 2010. Tr. 570, 596 and 599.

On March 16, 2010, Dr. Shapiro completed a document entitled "Mental Impairment Questionnaire (RFC & Listings)." Tr. 571-577.  There is no indication that on or about that date Dr. Shapiro examined Bliss.  Dr. Shapiro stated that Bliss suffered from cyclothymic disorder and panic disorder. Tr. 571.  Dr. Shapiro further stated that Bliss's current GAF score was 60 (representing moderate symptoms and only one point away from the next range on the scale which is indicative of only mild symptoms) and that Bliss's highest GAF score in the last year was 60 which conflicts with Dr. Shapiro's prior reports. Id. Dr. Shapiro noted that Bliss had marked and extreme limitations in several areas of functioning  such as maintaining regular attendance and being punctual and performing at

a consistent pace. Dr. Shapiro checked the block on the form questionnaire indicating that he expected Bliss to be absent from work more than 3 times a month because of his impairments.

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Bliss had not engaged in substantial gainful work activity since September 30, 2008, the alleged disability onset date. Tr. 11. In so finding the administrative law judge stated as follows: "The claimant worked after the alleged disability onset date and had earnings over the substantial gainful activity level in 2008 and 2009. However, he is currently working part-time at Giant at the customer service desk, and his earnings are just below the substantial gainful activity level. Since his earnings are no longer at the substantial gainful activity level, the undersigned will consider the remaining steps of the sequential evaluation process." Id.

At step two of the sequential evaluation process, the administrative law judge found that Bliss had the following severe impairments: HIV disease, cyclothymia, panic disorder, and gastroesophageal reflux disease. Id.

At step three of the sequential evaluation process the administrative law judge found that Bliss's impairments did not individually or in combination meet or equal a listed impairment. Tr. 11-13 and 16. In so finding the administrative law judge addressed Listing 14.08, the HIV listing, and relied on Dr. Hite's opinion. Id.

At steps four and five of the sequential evaluation process the administrative law judge found that Bliss had the residual functional capacity to perform work as a billing

clerk, a job classified as semi-skilled, sedentary work,[19] and that there were a significant number of such jobs in the local and national economies. Tr. 13, 17 and 55.  In so finding the administrative law judge rejected the opinion of Dr. Shapiro and relied on the opinion of Dr. Hite and the testimony of vocational expert.

The administrative record in this case is 611 pages in length and we have thoroughly reviewed that record.  The administrative law judge did a thorough job of reviewing Bliss's vocational history and medical records in his decision. Tr. 9-18. Furthermore, the brief submitted by the Commissioner adequately reviews the medical and vocational evidence in this case. Doc. 12, Brief of Defendant.  Bliss's primary argument is that the administrative law judge erred by rejecting the opinion of Dr. Shapiro and relying on the opinion of Dr. Hite, the state agency psychologist.[20]   We have thoroughly reviewed the record in this case and find no merit in Bliss's arguments.

Bliss admitted that at the sedentary level of exertion the only thing that would

---

[19] Although the administrative law judge also found that Bliss could perform a limited range of light work, if someone is found able to perform light work he or she is able to perform sedentary work.  The administrative law judge specifically found that Bliss could perform the job of billing clerk which was identified by the vocational expert as a semi-skilled, sedentary job.  The administrative law judge found that Bliss could only have occasional contact with the public and coworkers but that he could perform detailed work. The vocational expert testified that the billing clerk position involved detailed work and that a billing clerk would only need to have occasional contact with the public and coworkers. Tr. 55.

[20] Bliss also argued that Appeals Council erred by failing to consider his letter brief in support of his request for review and that the administrative law judge erred by failing to consider Dr. Shapiro's opinion regarding the Listings or whether the combination of Bliss's HIV and mental health conditions would equal any of the Listings.  Bliss in his reply brief withdrew the argument that the Appeals Council erred.  In addition, the administrative law judge appropriately considered the Bliss's impairments in combinatin at step three of the sequential evaluation process.  Furthermore, Bliss indicated that the only thing that would prevent him from engaging in sedentary work would be his mental impairments.  Tr. 36.

prevent him from working full-time would be his mental impairments. The administrative law judge determined that Bliss's mental impairments were not as limiting as claimed by Bliss and would not prevent him from engaging in detailed work as a billing clerk. Tr. 14 and 17. The administrative law judge concluded that Bliss had the mental ability to engage in semi-skilled work as a billing clerk. The administrative law judge rejected the opinion of Dr. Shapiro who "essentially [found that Bliss was] unable to perform even simple, routine repetitive (unskilled) work on a regular and continuing basis" because Dr. Shapiro's treatment records and global assessment of functioning scores of 60 and 70 were inconsistent with Dr. Shapiro's finding of total disability.

The administrative law judge stated that Bliss's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform work as a billing clerk. Tr. 14 and 17. The administrative law judge was not required to accept Bliss's claims regarding his limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Bliss when he testified at the hearing on April 7, 2010, the administrative

law judge is the one best suited to assess the credibility of Bliss.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.


                                                /s/ A. Richard Caputo
                                                A. RICHARD CAPUTO
                                                United States District Judge

Dated: November 21, 2011

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY J. BLISS,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 4:10-CV-02231** |
| | : | |
| vs. | : | (Complaint Filed 10/28/10) |
| | : | |
| **MICHAEL ASTRUE,** | : | |
| **COMMISSIONER OF SOCIAL** | : | (Judge Caputo) |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of the Commissioner and against Jeffrey J. Bliss as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Jeffrey J. Bliss disability insurance benefits and supplemental security income benefits is affirmed.

3. The Clerk of Court shall close this case.

/s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

Dated: November 21, 2011